# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CITY OF LINCOLN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Case No.: 2:16-cv-01164-KJM-AC** |
| **UNITED STATES OF AMERICA,** | ) |
| **et. al.,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

## STIPULATION AND [~~PROPOSED~~] ORDER
## REGARDING DISCOVERY PROCEDURE

With respect to protecting privileged material and work product, the authentication of historic records, and the production and processing of electronically stored information, Plaintiff City of Lincoln ("City") and Defendants United States of America, *et al.* ("United States") (hereinafter collectively, the "Parties") have agreed and hereby stipulate to the specific terms set forth below, and respectfully request that the Court ratify and enter an Order as follows:

**I.      Federal Rules of Evidence 502(d) - Protections for Privileged**
**Material and Work Product**

The Parties shall handle a claim of privilege or protection asserted after production as follows:

A.      The Parties recognize that discovery in this action may require the parties to review and disclose large quantities of documents.  For purposes of this Order, the term "document" should be read to include all forms of information, including electronically-stored information. The documents disclosed in this case could include materials subject to privilege or other legally recognized protection (materials that are not subject to discovery).

B.      Because document-by-document pre-production review would likely impose an undue burden on the Parties' resources, the Parties seek to invoke the protections afforded by Federal Rule of Evidence 502(d).

C.      Each party shall examine their files containing documents to be produced and shall screen these documents for privilege or protection. This examination shall be performed with due regard for the likelihood that the files contain privileged or protected documents. Nonetheless, given the large quantities of documents to be screened, the Parties may rely on random sampling or searching rather than document-by-document examination. The Parties recognize that, under these circumstances, it is highly possible that some privileged or protected materials may be produced during discovery.

D.      If a producing party determines that it has produced what it believes to be a privileged or protected document, it must take the following steps to invoke the appropriate privilege or protection.  Within reasonable time of discovering that it has produced what it believes to be a privileged or protected document it will notify all counsel of record notice of the claim of privilege or protection.  Furthermore, within thirty (30) days after receiving notice that the receiving party intends to refer to, quote, cite, rely upon, or otherwise use a document containing privileged or protected information, the producing party must give all counsel of record notice of the claim of privilege or protection.  The notice must identify the document(s) that is (are) privileged or protected and the date the document(s) was (were) produced.  The notice shall also provide information sufficient to meet the requirements of Federal Rule of Civil Procedure 26(b)(5)(A), namely: the information subject to the claim, the author, date, and addressees or recipients of the document (where applicable), the privilege or protection being asserted, and the basis for the claim of privilege or protection.  If the producing party claims that only a portion of a document is privileged or protected, in addition to the notice, the producing party shall provide a new copy of the document with the allegedly privileged or protected portions redacted.

E.      Upon receiving notice of a claim of privilege or protection (as set forth in paragraph 4), the receiving party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; and must take reasonable steps to retrieve the information if the retrieving party disclosed it before being notified. *See* Fed. R. Civ. P. 26(b)(5)(B). If the receiving party does not

agree with the privilege claim, the parties must promptly meet and confer in an attempt to resolve the claim.  If this conference does not resolve the claim, the receiving party may present the information to the Court by noticed motion, pursuant to the procedures established by Local Rule 251.  In doing so, the Parties may file the disputed documents under seal, and file redacted briefing.  Any party in possession of the information in dispute must preserve the information until the claim is resolved.  *Id*.

F.     To the extent that notes or records in any form concerning any privileged or protected information exist (other than those pertaining solely to assertion of the privilege), the portions of any such notes or records regarding the privileged or protected information shall be permanently destroyed, deleted, or redacted if the claim of privilege or protection is upheld.

G.     Disclosure of any documents or other information that the producing party later claims should not have been disclosed because of any privilege or protection will not be deemed to constitute a waiver of the privilege or protection for purposes of this proceeding, or any other federal or state proceeding. *See* Fed. R. Evid. 502(d).

H.     This Order applies to documents and information covered by the attorney-client privilege and the attorney work-product protection, and thus constitutes a controlling order under Federal Rule of Evidence 502(d) with respect to waiver.  For purposes of this proceeding, this Order also applies to any other privilege or protection under federal or state law that the parties may properly assert to prevent disclosure of information.

I.     All receiving parties remain under a good faith obligation to notify any producing party if they identify a document which appears on its face, or in light of facts known to the receiving party, to be potentially privileged or protected.  Such notification shall not waive the receiving party's ability to subsequently challenge any claim of privilege with respect to the identified document.  If a receiving party provides such notice, the producing party must follow the steps set forth above in paragraph 4 to claim privilege or protection.

**II.     <u>Authentication of Documents</u>**

The parties recognize that this case will require the production of historic documents generated and maintained by City and United States.  The parties expect that there will be little

1  reason to question the authenticity of such documents.   In order to preserve resources, the

2  parties agree that authentication of documents (other than handwritten notes) is presumed.   The

3  parties agree that in order to challenge authentication of a document, a party must have "good

4  cause."  *See Columbia First Bank, FSB v. United States*, 58 Fed. Cl. 333 (Fed. Cl. 2003) (parties

5  may stipulate that authenticity of documents is presumed and require a party to show "good

6  cause" to challenge that presumption – to demonstrate good cause party must demonstrate

7  specific concerns that criteria for authentication is absent).

8  **III.     Electronically Stored Information (ESI)**

9         The parties have met and conferred regarding the necessity of an up-front agreement on

10  handling ESI and have agreed and stipulate to the following procedures.

11       1.     Definitions:

12            a.     "Draft," when used to describe either an electronic or hard copy

13  document, means "a preliminary version of a document that has been shared by the author with

14  another person (by email, print, or otherwise) or that the author no longer intends to finalize or

15  to share with another person;"

16            b.     "Duplicate," when used to describe either an electronic or hard copy

17  document, means that the document does not show any facial differences, such as the inclusion

18  of highlights, underlining, marginalia, total pages, attachments, markings, revisions, or the

19  inclusion of tracked changes. Differences in system metadata fields, such as date created or

20  modified, that do not affect the face of the document, are not relevant to determining whether

21  the document is a duplicate.

22            c.     "Electronically Stored Information or ESI" means information created,

23  manipulated, communicated, stored, and best utilized in digital form, requiring the use of

24  computer hardware and software, as established in Federal Rule of Civil Procedure 34(a).  ESI

25  includes, writings, emails, drawings, graphs, charts, photographs, sound and/or video

26  recordings, images, and other data or data compilations.

27            d.     "Parties" means the parties to this litigation, including their employees

28  and agents.

e. "Policy" means a regular practice at an entity that managers know about and expect to be carried out.

2. <u>Preservation</u>:

a. <u>Preservation Not Required for ESI That Is Not Reasonably Accessible</u>.

Except as provided in subparagraph b below, the Parties need not preserve the following categories of ESI for this litigation:

i. Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely deleted or written over in accordance with an established routine system maintenance practice;

ii. Voicemail messages;

iii. Instant messages, such as messages sent on AOL Instant Messenger or Microsoft Communicator;

iv. Text messages, such as cell phone to cell phone SMS messages;

v. Electronic mail sent to or from a personal digital assistant ("PDA"), smartphone (e.g., BlackBerry, iPhone), or tablet (e.g., iPad) provided that a copy of such email is routinely saved elsewhere;

vi. Other electronic data stored on a PDA, smartphone, or tablet, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere;

vii. Logs of calls made from cellular phones;

viii. Deleted computer files, whether fragmented or whole (nothing in this order authorizes the intentional deletion of ESI after the duty arose to preserve such ESI);

ix. Data stored in random access memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

x. Data stored on photocopiers, scanners, and fax machines;

1          xi.      Server, system, or network logs;

2          xii.     Electronic data temporarily stored by scientific equipment or

3    attached devices, provided that the data that is ordinarily preserved as part of a laboratory report

4    is, in fact, preserved in its ordinary location and form; and

5          xiii.    Data stored on legacy systems that were no longer in use five

6    years before the complaint was filed.

7          b.      Notwithstanding subparagraph a. above, if on the date of this Order either

8    Party has a Policy that results in the routine preservation of any of the categories of information

9    identified in subparagraph a, such Party shall continue to preserve such information in

10   accordance with its Policy.

11         c.      Nothing in this Order prevents any Party from asserting, in accordance

12   with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably

13   accessible within the meaning of Rule 26(b)(2)(B).

14         3.      <u>Use of Documents During Litigation</u>. Notwithstanding any other provision of this

15   Order, the Parties may take any of the following actions with respect to ESI.

16         a.      The Parties may continue to work, in the ordinary course of business, on

17   documents that do not meet the definition of Draft in Part I.  However, the Parties shall preserve

18   Draft documents for discovery.

19         b.      The Parties may move unfiled documents or ESI into files or folders that

20   adhere to an organizational scheme that was created before the complaint was filed in this

21   matter. Nothing in this subparagraph prevents the Parties from implementing an organizational

22   scheme that applies only to documents or ESI created after the complaint was filed in this

23   matter.

24         c.      The Parties may delete, overwrite, or wipe ESI from devices that are

25   being replaced, upgraded, reimaged, disposed of, or returned at the end of lease, provided that

26   the potentially relevant ESI is first copied to a new location in a manner that preserves the data,

27   including metadata that may be produced pursuant to section 8, below.

28

d.      The Parties may copy data from one device to another, or from one location to another, provided that a copy of the ESI remains accessible in the first location or the new copy is created in a manner that preserves the data, including metadata, which may be produced pursuant to section 8, below.

e.      The Parties may load loose ESI into an enterprise content management system, provided that: (1) the enterprise content management system captures all of the metadata fields that must be produced under this order and does not convert the format of the ESI in a way that makes it significantly less accessible; or (2) the Parties maintain a copy of the ESI in its native format and make their production from this native file collection upon request of the requesting party, following initial production as provide in section 8, *infra*.

f.      The Parties may upgrade, patch, reprogram, or customize software that stores relevant data, even if such actions alter the way data is maintained, stored, or viewed, (provided that the relevant data itself is not altered).

g.      The Parties may take any of the following actions with respect to data in a database provided that it is part of the routine use of the database: input additional data; access data; update the software running the database; append new data; and modify existing data.

h.      The Parties may edit or take down any data on a publicly accessible internet site.

i.      The Parties may add data to an intranet or private website. The Parties may edit or take down any data on an intranet or private website, provided that a copy of the data is made before the change and is preserved for discovery.

j.      The Parties may compress, decompress, encrypt, or decrypt data subject to preservation in this matter provided that any data losses during such processes do not result in loss of the metadata required to be produced under this Order or significantly degrade the quality of the data.

k.      The Parties may update social media sites, but may not take affirmative steps to delete relevant data posted before the filing of the Complaint.

1    4.    <u>Preservation Required for Certain Subject Matters</u>. The Parties agree to preserve,

2    for the purpose of this litigation, documents and ESI relating to the following subject matters

3    and not exempted from preservation requirements pursuant to the preceding paragraphs of this

4    Part III.:

5        a.    All documents (including, for example, emails, reports, photographs,

6    videotapes, and studies) pertaining to the City of Lincoln Landfill (the "Site"); and the Beale Air

7    Force Base Titan 1-A Missile Facility, located at or around 401 Oak Tree Lane, Lincoln,

8    California 65348 ("Missile Site");

9        b.    Correspondence or documents exchanged with any local, state or federal

10   regulator relating to compliance with state law, federal law, or environmental response actions

11   proposed or contemplated at the landfill Site and the Missile Site;

12       c.    Documents relating to any permits or approvals for the landfill Site and

13   the Missile Site.

14   5.    <u>Preservation Does Not Affect Discoverability or Claims of Privilege</u>.   By

15   preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that

16   such material is discoverable, nor are they waiving any claim of privilege.  Except as otherwise

17   provided in Paragraphs III.7.c and d, nothing in this Order shall alter the obligations of the

18   Parties to provide a privilege log for material withheld under a claim of privilege.

19   6.    <u>Other Preservation Obligations Not Affected</u>.   Nothing in this agreement shall

20   affect any other obligations of the Parties to preserve documents or information for other

21   purposes, such as pursuant to court order, administrative order, statute, or in response to other

22   anticipated litigation.

23   7.    <u>Collection of ESI</u>.

24       a.    <u>Search Technology</u>. The Parties will disclose to each other any software

25   or other computer technology used to identify or eliminate potentially responsive documents.  If

26   a Party intends to use search terms, it will meet and confer with the other Party to identify

27   mutually agreeable search terms for email messages and other electronically stored information.

28

Nothing in this paragraph obligates any Party to agree to perform an electronic search or to accept the results of an electronic search as a sufficient response to a discovery request.

b.      Third-Party Data. The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google™ or Yahoo™, or any social media companies such as Facebook™ or Twitter™.

c.      No Discovery of Material Not Required To Be Preserved.  Absent a showing of extraordinary circumstances, the Parties shall not seek discovery of items that need not be preserved pursuant to Paragraph III. 2 above.  Any discovery request seeking such information must be served separately from discovery requests seeking other materials and must include a statement showing good cause for the discovery of such materials, considering the limitation of Federal Rule 26(b)(2)(C).  If any general discovery request is susceptible of a construction that calls for the production of items that need not be preserved pursuant to Paragraph III.2 such items need not be searched for, produced, or identified on a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

d.      Privileged Materials Located in the Offices of Counsel.  The Parties agree that, in response to general discovery requests, the Parties need not search for and produce, nor create a privilege log for, any privileged or work product material that is located in the offices of the U.S. Department of Justice or outside counsel for Plaintiff, City of Lincoln.  The Parties shall not keep discoverable materials in the office covered by this paragraph unless a copy or duplicate of the materials is located elsewhere in the possession, custody, or control of the Party.

8.   Production.

The following procedures apply to producing ESI. Compliance with these procedures shall constitute compliance with Federal Rule of Civil Procedure 34(b)(2)(E).

a.      Paper documents:  The provisions of Federal Rule of Civil Procedure 34(b)(2)(B) shall govern responses to requests for production.  At the Producing Party's discretion, documents on paper may be produced on paper or they may be scanned and electronically reproduced on CD-ROM, DVD-ROM, or external hard drive.  Paper documents

1  that are produced on disc shall be scanned at 300 dpi and produced as PDF files, with one file

2  for each document, or as maintained by the Party in its document repository.

3          b.     <u>ESI Files Shall be Produced as Follows</u>.

4                 i.     Word and WordPerfect documents may be converted to PDF files,

5  with one file for each document. The PDF file name will contain the range of Bates-numbers

6  assigned to the pages contained in the PDF file.  The PDF files shall contain extracted text from

7  the document, unless the document contains redactions, in which case OCR text may be

8  provided.  If a document produced contains comments or tracked changes that are not part of the

9  ordinary text, the PDF shall be generated based on how the document appears when first opened

10  using view settings contained in the file, and the receiving party shall have the option, after

11  reviewing the produced PDF image, to request the native file.

12                 ii.     Microsoft PowerPoint files will be processed and produced in the

13  same manner as Word and WordPerfect documents, except that the PDFs shall be generated as

14  full color, half-page or full page slides with one slide per page.  Notes shall appear beneath the

15  half-page image of the slide, or appear at the end.

16                 iii.     E-mail and attachments will be produced as PDF files with one

17  file per e-mail. The PDF file shall contain extracted text from the email, however, if the

18  producing party redacts any part of the e-mail before producing it, OCR text may be provided in

19  place of extracted text. E-mail attachments shall be processed as part of the same email

20  document.

21                 iv.     Microsoft Excel files and other spreadsheets will be produced in

22  PDF format with Bate-stamps in the title.  Native format Excel files shall be available upon

23  request.

24                 v.     Digital photographs will be produced as full color PDF files at

25  their original resolution with Bates numbers branded onto them;

26                 vi.     Embedded files shall be treated as though they were separate files.

27                 vii.     The producing party shall produce all ESI on a disc containing

28  folders identifying the department or agency where the document was maintained.  Where the

document was found within a specific individual's folder or computer, the document shall be produced in a subfolder containing the identifying information for that individual.   ESI produced in PDF format shall include the Bates-number in the document title.

viii.    Documents maintained on microfiche or microfilm shall be made available to the requesting party for review, or at the producing party's discretion, be produced either as PDF files or duplicate microfiche or microfilm.

d.    Before any Party produces any other kinds of electronic data, including data from databases, CAD drawings, GIS data, videos, etc., the Parties will meet and confer to determine a reasonably useable form for the production.

e.    Except as expressly stated otherwise above, PDFs produced in this matter may be black-and-white images (no shades of gray). However, the receiving party has the option, after reviewing the produced PDFs, to enquire whether the original document contained color and, if so, to request a color image.

f.    Except as stated above, a Party need not produce the same electronically stored information in more than one form.

**IV.    Miscellaneous provisions.**

1.    Before filing any motion with the Court regarding electronic discovery or evidence, the Parties will meet and confer in a good faith attempt to resolve such disputes, and comply fully with Local Rule 251(b).

2.    Costs of Document Production.   Each Party shall bear the costs of initially producing its own documents To the extent that any party demands additional ESI searches that may require the producing party to procure software that the producing Party does not currently possess (*e.g.,* harvester programs), the parties shall meet and confer regarding the costs of compliance with this provision.   The parties reserve the right to file motions regarding cost sharing or cost shifting of the costs associated with the software necessary to comply with this provision.

3.    Effect of Order.  The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause

shown. Nothing in this Order shall abridge the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

Dated:  December 14, 2016

BROWN & WINTERS

*/s/ Jeffrey T. Orrell*
WILLIAM D. BROWN (SBN 125468)
JEFFREY T. ORRELL (SBN 237581)
Brown & Winters
120 Birmingham Drive
Cardiff-by-the-Sea, CA 92007-1737
Tel.: 760-633-4485/Fax: 760-633-4427
Attorneys for Plaintiff
CITY OF LINCOLN

Dated:  December 14, 2016.

*/s/ Mark A. Rigau* (as authorized on December 14, 2016)
MARK A. RIGAU (SBN 223610)
Senior Trial Counsel
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
301 Howard Street, Suite 1050
San Francisco, California 94105
Telephone No.: (415) 744-6487
Facsimile No.: (415) 744-6476

*/s/ Henry T. Miller* (as authorized on December 14, 2016)
HENRY T. MILLER (D.C. Bar 411885)
Senior Trial Counsel
U.S. Department of Justice
Civil Division – Torts Branch
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4223
Facsimile No.: (202) 616-4473

Attorney for Defendants the United of America, GSA, and the Department of Air Force

1   Pursuant to the Stipulation, **IT IS SO ORDERED** this 15th day of December, 2016.

2

3

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28