UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF LINCOLN,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF THE AIR FORCE; UNITED STATES GENERAL SERVICES ADMINISTRATION; and DOES 1 through 100, inclusive,<br><br>        Defendants. | No. 2:16-cv-01164-KJM-AC<br><br>ORDER |

        This action arises from the City of Lincoln's ("City") lawsuit against the United States of America, the United States Air Force, and the United States General Services Administration ("Federal Defendants") for alleged environmental contamination. Before the court is the City's motion for leave to file a First Amended Complaint and to modify the scheduling order. Mot., ECF No. 34-1. Specifically, the City requests what amounts to the following:

    1. Leave to amend and file a First Amended Complaint to name the County of Placer as an additional defendant,

/////

1

2. Leave to amend and file a First Amended Complaint to include additional factual allegations against the Federal Defendants, and

3. A modification of the scheduling order to extend discovery and expert discovery by four months, and to increase the number of fact discovery depositions from ten to twenty.

The Federal Defendants oppose the motion. Opp'n, ECF No. 37. The City has replied. Reply, ECF No. 40. Because the City "with[drew] its [second] request to include additional factual allegations against Defendants," Reply at 1 n.1, the City's second request to add factual allegations against the Federal Defendants is DENIED as MOOT. The court therefore analyzes the City's first and third requests only. For the below reasons, the court DENIES City's first request to add the County of Placer and DENIES the City's third request to modify the scheduling order.

I. BACKGROUND

    A. Factual Background[1]

Since 1952, the City of Lincoln has owned, operated and maintained a six-acre landfill ("Dump") in Placer County, California. Defs.' Statement of Undisputed Facts ("SUF") 1-4, ECF No. 22-2. From approximately 1961 to 1966, the Dump was operated five days per week and received mixed refuse from local businesses and approximately 1,200 residences. SUF 11, 16-18. The Dump reduced its operations starting in 1971, ceased operations in 1976 and was enclosed with a low permeability cover in 1993. SUF 22-23, 25, 32; *see also* Pl.'s Statement of Disputed Facts ("SDF") 91, ECF No. 25-1.

In January 1960, the Army Corps of Engineers contracted with Peter Kiewit & Sons Co. ("Kiewit") to construct three Titan I Intercontinental Ballistic Missile ("ICBM") launch facilities near Beale Air Force Base and in the cities of Lincoln, Sutter and Chico. SUF 38; Defs.'

---

[1] This Factual Background section is based in part on the court's order granting the United States' motion to dismiss the City's Federal Tort Claims Act claims. *See* ECF No. 38 at 2–4. The court relies on the parties' statement of undisputed facts for convenience and because these facts better reflect the development of the case since the filing of the initial complaint.

Ex. 12 (CEBMCO[2] Historical Summary) at 13, 17, 19, ECF No. 22-15.  At or about this time, the United States acquired the property on which it would ultimately locate the Lincoln facility ("the Facility").  *See* SDF 3; Pl.'s Ex. 7, ECF No. 25-13 (finding Air Force acquired 274.99 acres for facility in 1958); Pl.'s Ex. 3, ECF No. 25-9 (final judgment awarding United States ownership of property in April 1960).  Kiewit subcontracted much of the construction to other companies, including Superior Electric Construction Co., Inc. ("Superior"), which installed electrical systems.  SUF 41, 43.  After completing construction in early 1962, Kiewit transferred possession and control of the facilities to Martin Company ("Martin"), which was then responsible for activating the launch facilities before delivering them to the Air Force.  SUF 39, 45, 46; CEBMCO Historical Summary at 19, 34.  On September 20, 1962, the Air Force accepted and took over the missile launch facilities from Martin.  SUF 50.

   The parties agree that one private subcontractor disposed of refuse at the Dump, SUF 52, but dispute whether any other contractor or subcontractor disposed of refuse at the Dump during the pre-operational period from January 1960 to September 1962.  *See id.*  The parties also dispute whether defendants' employees, including Army Corps of Engineers' Resident Office employees, Lincoln facility site inspectors and other Air Force personnel, disposed of refuse.  *See* SDF 94.  Starting in September 1962, the City began collecting thirty-three-gallon cans of refuse from the Facility three times per week.  SUF 65-67.  The parties dispute the contents of this refuse and whether the contents were hazardous.  *See* SUF 70-71; SDF 105-107; Pl.'s Objs. 2-4, ECF No. 25-3[3]; Pasilla Dep. at 150:21-23.  The City continued to collect the Facility's refuse until at least January 1965, when the Air Force began deactivating the missiles and shutting down the Facility.  SUF 73-76.

   Plaintiff alleges subcontractors and contractors for the Federal Defendants dumped hazardous refuse in the Dump.  Compl. ¶¶ 12-15, ECF No. 1.  The California Regional Water Quality Control Board ("the RWQCB") issued a Waste Discharge Requirements order for the

---

[2] Core of Engineers Ballistic Missile Construction Office.  *See* ECF No. 22-15.

[3] The court cites these objections only to show the parties' dispute.  The court otherwise only relies on evidence for which the court has overruled objections.

3

Dump. SUF 31; Defs.' Ex. 11 (RWQCB Order No. R5-2003-0142) at 1 ¶ 4, ECF No. 22-14. The RWQCB required the City to maintain five feet of separation between groundwater and the bottom of the landfill, and to define how much of the groundwater contained total dissolved solids and volatile organic compounds. SUF 34. The RWQCB found the City had violated the order because releases from the Dump affected nearby groundwater quality, and the Dump failed to ensure the required five-foot separation. SUF 35, Defs.' Ex. 5 (RWQCB Order R5-2014-0703) at 2-4, ECF No. 22-8. The RWQCB required the City to develop a Corrective Action Plan ("CAP") to maintain the minimum five-foot separation, remediate groundwater impacts and maintain the landfill cover. SUF 37; RWQCB Order R5-2014-0703 at 7 ¶¶ 31-33.

### B. Procedural Background

In this case, the City sues the Federal Defendants to recover costs of the environmental contamination, and initially brought the following six claims: (1) Continuing Nuisance; (2) Continuing Trespass; (3) Equitable Indemnity / Contribution; (4) Cost Recovery under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a); (5) Contribution under CERCLA, 42 U.S.C. § 9613; and (6) Declaratory Relief. Compl., ECF No. 1. Claims 1 through 3 have been dismissed. ECF No. 38 at 2-4. Parties have since engaged in voluminous discovery. Mot. at 3. The Federal Defendants have produced approximately 54,000 pages of discovery, and the City has produced approximately 81,000 pages of discovery. *Id.*

#### 1. Initial Pretrial Scheduling Order

The court issued its initial pretrial scheduling order on November 10, 2016. Sched. Order, ECF No. 11. In its initial order, the court provided, "The City may seek additional amendments to the pleading and joinder of additional defendants. . . . The United States may file counter claims. No further joinder of parties or amendments to pleadings is permitted without leave of court, good cause having been shown." *Id.* at 2.

The court initially set October 6, 2017 as the deadline for the completion of discovery. *Id.* The City's initial expert designations were set to be completed by November 14, 2017; the Federal Defendants' initial expert designations were set to be completed by January 12,

2018. *Id.* at 4. The City's deadline for rebuttal expert witnesses was set for February 9, 2018. *Id.* Expert discovery was set to be completed by March 14, 2018. *Id.*

### 2. Amendments to Pretrial Scheduling Order

The court amended its initial scheduling order for the first time on December 7, 2016, without changing the discovery deadlines. *Compare* Sched. Order at 4, *with* First Am. Sched. Order at 4, ECF No. 18.

Good cause appearing, the court issued its Second Amended Scheduling Order on October 6, 2017. Second Am. Sched. Order, ECF No. 42. The parties filed a stipulation requesting a clarification of the court's Second Amended Scheduling Order on October 18, 2017. ECF No. 43. Good cause appearing, the court issued its Third Amendment to the Pretrial Scheduling Order on October 23, 2017, clarifying the discovery dates. Third Am. Sched. Order, ECF No. 44. The new dates were as follows: discovery cut-off extended to February 9, 2018; plaintiffs' expert disclosures extended to March 14, 2018; defendants' expert disclosures extended to May 14, 2018; supplemental expert disclosures extended to June 11, 2018; and completion of expert discovery extended to July 13, 2018. *Id.* at 2.

The parties then filed a stipulation requesting a fourth amendment to the pretrial scheduling order, ECF No. 57, noting a magistrate judge's order, ECF No. 54, permitting two scheduled depositions to occur after the fact discovery cut-off of February 9, 2018. *See* ECF No. 57 at 2. The parties jointly requested an amendment to the pretrial order to reflect the discovery cut-off as "[c]omplete." *Id.* at 3. The parties acknowledged the City had taken four depositions since the third amendment to the pretrial scheduling order, issued more than six months before this stipulation. *Compare* Third Am. Sched. Order (dated Oct. 23, 2017), *with* ECF No. 57 (dated May 8, 2018). The court granted this request. ECF No. 58.

### 3. City's Motion to Amend

The City filed this Motion to Amend on September 6, 2017, a little more than a month before the court issued its Third Amended Scheduling Order. Mot. at 20; Third Am. Sched. Order. In its motion, the City seeks: (1) Leave to amend to file a First Amended Complaint naming the County of Placer as an additional defendant, (2) Leave to amend to file a

5

First Amended Complaint including additional factual allegations against the existing Federal Defendants, and (3) Modification of the scheduling order to extend fact discovery and expert discovery by four months, and to increase the number of depositions allowed from ten to twenty, excluding expert depositions. Mot. at 1.

### 4. The Federal Defendants' Opposition

The Federal Defendants filed their opposition on September 22, 2017. Opp'n at 18. They "[do] not oppose the City's motion to the extent the City seeks a four-month extension of the discovery deadlines with respect to the City's claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), but opposes the City's motion in all other respects." Opp'n at 5.

### 5. City's Reply and Parties' Stipulation for Modification of Scheduling Order

The City filed its reply and a stipulation by parties to modify the scheduling order on September 29, 2017. Stip., ECF No. 39; Reply at 10. In its reply, the City requests the court grant the extension for the reasons stated in the moving papers, and for the reasons stated in the joint stipulation. Reply at 1 n.1. The City also withdrew its request to include additional factual allegations against defendants in light of the court's ruling on the defendants' motion to dismiss. *Id*. The City's second request to add factual allegations is DENIED as MOOT.

The court thus analyzes the City's first and third requests.

## II. LEGAL STANDARDS

### A. Motion to Amend Complaint

When a party seeks to amend its complaint after a Rule 16 scheduling order has been issued, the party's ability to amend its complaint is governed by Rule 16(b), not Rule 15(a). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); *see also Johnson v. St. Mary*, No. CIV S-06-0508 WBS EFB PS, 2007 WL 1100507, at *1 (E.D. Cal. Apr. 11, 2007), *findings and recommendations adopted*, No. CIV-S-06-0508-WBS EFB PS, 2007 WL 1365400 (E.D. Cal. May 9, 2007) ("[The Eastern District], applying *Johnson* [*v. Mammoth Recreations*], has confirmed that once the district court has filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16, a motion to amend the pleadings is governed first by Rule 16(b), and

only secondarily by Rule 15(a)"). Under Rule 16(b), a movant must demonstrate "good cause" to justify adding a new defendant. *Mammoth*, 975 F.2d at 608; *St. Mary*, 2007 WL 1100507, at *1 (citing *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999); *Roberts v. Beard*, No. 15cv1044-WQH-PCL, 2018 WL 454437, at *4 (S.D. Cal. Jan. 17, 2018). "The 'good cause' standard 'focuses on the diligence of the party seeking amendment.'" *St. Mary*, 2007 WL 1100507, at *1. "Relevant inquiries [into diligence] include: whether the movant was diligent in helping the court to create a workable Rule 16 order; whether matters that were not, and could not have been, foreseeable at the time of the scheduling conference caused the need for amendment; and whether the movant was diligent in seeking amendment once the need to amend became apparent." *Id*. If the party was not diligent, the inquiry ends. *Mammoth*, 975 F.2d at 609.

### B. Motion to Amend Scheduling Order and Take Additional Depositions

The court will modify dates set forth in a scheduling order only upon a showing of good cause by the moving party. Fed. R. Civ. P. 16(b)(4); *Mammoth*, 975 F.2d at 608. The primary factor considered in a good cause determination is whether the moving party was diligent in its attempts to complete discovery in a timely manner. *Mammoth*, 975 F.2d at 609. If that party was not diligent, the inquiry should end and the request should be denied. *Id*. Courts have used a three-step inquiry in assessing diligence for determining good cause under Rule 16:

> [T]o demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that she was diligent in assisting the Court in creating a workable Rule 16 order; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order.

*Grant v. United States*, No. 2:11-CV-00360 LKK, 2011 WL 5554878, at *4 (E.D. Cal. Nov. 15, 2011), *report and recommendation adopted*, No. CIV-S-11-0360-LKK, 2012 WL 218959 (E.D. Cal. Jan. 23, 2012) (citing *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999)). "Motions [to amend] are more often granted when the opposing party's actions caused delay or when the need to amend arises from some unexpected or outside source." *Fed. Deposit Ins.*

7

*Corp. As Receiver for Butte Cmty. Bank v. Ching*, No. 2:13-CV-01710-KJM-EFB, 2016 WL 1756913, at *2 (E.D. Cal. May 3, 2016) (citing *Hood v. Hartford Life and Acc. Ins. Co.*, 567 F. Supp. 2d 1221, 1225-26 (E.D. Cal. 2008)).

Additionally, a party may take up to ten depositions without leave of court or stipulation of the parties. Fed. R. Civ. P. 30(a)(2)(A)(i). "Generally, courts will not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right under Rule 30(a)(2)." *Couch v. Wan*, No. 1:08cv1621 LJO DLB, 2011 WL 4499976, at *1 (E.D. Cal. Sept. 27, 2011). But courts have departed from this "exhaustion rule" where the complexity of the case clearly warranted more than ten depositions. *Id.* (citing *Del Campo v. Am. Corrective Counseling Servs.*, No. C-01-21151 JW (PVT), 2007 WL 3306496 (N.D. Cal. Nov. 6, 2007)). The party seeking leave of court must make a "particularized showing" why the discovery is necessary under Rule 26. *Id.* (citing *C&C Jewelry Mfg., Inc. v. West*, 2011 WL 767839, at *1 (N.D. Cal. 2011)).

III. DISCUSSION

    A. Motion to Amend Complaint to Include Additional Defendant

The City's seeks leave to file a First Amended Complaint to add the County of Placer ("County") as an additional defendant. Mot. at 1. The City contends that around the time it initiated this lawsuit, "it did not know of any individual with knowledge of a specific arrangement between the City and the County, dating back to the 1950s and 60s, for County residents and businesses to use the landfill." Mot. at 13. The City claims it later discovered the relationship between the City and the County "during the process of reviewing its own voluminous document production." *Id.*

The City must demonstrate "good cause" to justify adding the County as a new defendant under Rule 16(b). *Mammoth*, 975 F.2d at 608; *St. Mary*, 2007 WL 1100507, at *1. The court "focuses on the [City's] diligence [in] seeking amendment." *St. Mary*, 2007 WL 1100507, at *1. Here, the City was not diligent in seeking leave to name the County as an additional defendant because it had a reasonable basis to know of its own relationship with the County before initiating this suit against the Federal Defendants. "The good cause standard

8

typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action." *In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013). In its own complaint, the City alleged it opened the Dump to the County's residents and the County's public and private entities for waste disposal from 1952 through 1976. Compl. ¶ 11. The City's own initial factual allegation shows the City had reason to suspect the County's potential involvement with dumping hazardous waste into the Dump for at least a 24-year period.

Additionally, the City's lack of diligence is clear from the numerous filings in this litigation showing the City's knowledge or notice about the County's potential involvement with dumping hazardous waste. The first relevant filing was a joint status report filed October 6, 2016. ECF No. 8. The City disclosed its knowledge that County residents, County public entities and County private entities used the Dump to dispose of waste, and the United States put the City on notice of its claim that "the City collected and disposed of industrial waste and household garbage generated by numerous commercial entities, County and City entities . . . ." *Id.* at 2, 5. The United States further asserted "commercial entities, County and City entities, and residents of the City and surrounding area individually accessed the dump and disposed of industrial waste and household garbage on site." *Id.* at 5. These statements in a joint status report show the City had a basis to suspect the County's potential involvement with dumping hazardous waste into the Dump nearly a year before filing this motion. *See, e.g.*, *Ross v. Chipotle Mexican Grill, Inc.*, No. 15cv1000-MMA (JLB), 2016 WL 9024884, at *3 (S.D. Cal. Mar. 1, 2016) (not diligent when plaintiff had "multiple occasions to discover information" about another possible defendant).

Additionally, the City's counsel admits in a declaration that "[t]he City informed the County, at least as early as January of 2017, that it possessed some limited information that the County or its residents contributed wastes to the [Dump], and that pending further investigation and discovery, it may be seeking to bring the County into the action." Orrell Decl. ¶ 41, ECF No 34-2. This filing shows the City had at least some information about the County or County residents contributing waste to the Dump and was expressly considering adding the

/////

9

County to this suit approximately eight months before filing the instant motion. This approximately eight-month delay exposes the City's lack of diligence in seeking leave to amend.

As a third example, even if the City was somehow not sufficiently aware of the County's potential involvement in dumping hazardous waste, the City's own two witnesses testified at depositions about the County's potential involvement in environmental contamination. *See* ECF No. 22-6 (Ojeda Dep. at 29:6-8, 56:3-9); ECF No. 22-9 (Pasillas Dep. at 34:5-10, 35:1-4, 39:21-22, 106:19-22, 127:1-131:6). Both witnesses' depositions occurred in February 2017. ECF No. 22-6 at 4 (Feb. 27, 2017); ECF No. 22-9 at 5 (Feb. 28, 2017). Specifically, Ojeda testified he believed people from Placer County had access to the dump site and Placer County paid a set fee for its residents to access the dump site. Ojeda Dep. at 56:3-9. Pasillas testified, "[t]here was household garbage, there was, of course, from the County different stuff, you know what I mean?" Pasillas Dep. at 35:3-4. Pasillas knew the County and City "had some kind of arrangement" for County residents to use the dump site. *Id.* at 106:19-22. Even if the City lacked awareness or notice before these depositions, the City heard its own witnesses relay substantial information about County residents and entities disposing of waste at the Dump seven months before filing this motion.

The City was aware of the County's involvement in waste disposal as shown by its own allegations in its initial complaint, a joint status report, its own counsel's communications to the County, and at the latest by the deposition testimony of its own two witnesses designated as persons most knowledgeable about the types of waste disposed of at the Dump. The City had multiple reasons to be aware of the County's involvement in waste disposal as early as May 27, 2016, at the time it filed its complaint and as recently as February 27, 2017 at its own witness's depositions. The City was not diligent when it waited at least seven months, if not well over a year, to seek leave to add the County as an additional defendant. *Compare, e.g.*, *Genentech Inc. v. Trustees of Univ. of Pennsylvania*, No. 10-cv-02037-LHK, 2011 WL 4965638, at *1 (N.D. Cal. Sept. 16, 2011) (motion to amend not diligent when filed four months after plaintiff "knew about the facts supporting" a new legal theory), *and Via Technologies, Inc. v. ASUS Computer Int'l*, No. 14-cv-03586-BLF (HRL), 2017 WL 396172, at *1-4 (N.D. Cal. Jan. 30, 2017) (motion

to amend not diligent when filed three months after a court order provided notice to plaintiff), *with Kendrick v. Cty. of San Diego*, 2017 WL 2692903, at *4 (S.D. Cal. June 22, 2017) (party was diligent when it filed motion to amend when "less than a month passed"); *see also Experexchange, Inc. v. Doculex, Inc.*, No. C-08-3875 JCS, 2009 WL 3837275, at *29 (N.D. Cal. Nov. 16, 2009) (delay of two months after discovering new facts, after fully briefed summary judgment and without explanation for the delay did not meet good cause standard under Rule 16).

The City argues its knowledge of the County's use of the Dump does not equate to knowing about the County's possible "arranger" liability. Mot. at 13; *see* 42 U.S.C. § 9607(a)(3) (providing one definition of a "covered person" or liable party under the Comprehensive Environmental Response, Compensation, and Liability Act as "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances . . . ."); *see also Transportation Leasing Co. v. State of Cal. (CalTrans)*, 861 F. Supp. 931, 944-48 (C.D. Cal. 1993) (analyzing arranger liability of multiple parties). But the City admits that its "former waste hauler depositions also revealed that City waste trucks collected refuse from the County of Placer Corporation Yard, and disposed of those wastes at the [Dump]," which implicated the arranger liability the City claims it did not know about before those depositions. *Id.* The City does not justify how the approximate seven-month delay between the depositions and the filing of this motion shows diligence.

Moreover, the City admits it had information about the County in its own possession by stating the City discovered its relationship with the County "[d]uring the process of reviewing its own voluminous document production." *Id.* Courts have found parties not diligent when those parties possessed the documents containing the relevant information. *Compare Ross*, 2016 WL 9024884, at *3 (not diligent when plaintiff possessed documents pointing to the proper defendants before suing), *with Melingonis v. Rapid Capital Funding, L.L.C.*, No. 16cv490-WQH-KSC, 2017 WL 1550045, at *3 (S.D. Cal. May 1, 2017) (diligence found where plaintiff could practically amend complaint only after receiving defendants' written discovery responses). The City had access to its own documents throughout the course of this litigation, and yet the City

11

delayed "a more in-depth review" of the documents' contents to determine whether the County may be a possible defendant until "[a]fter production" across the "eleven months since the Rule 26 conference" on September 13, 2016. Mot. at 13; ECF No. 8 at 1. The City does not claim it was ever prevented from accessing and reviewing its own documents but instead refers to "the massive file produced by both parties" and refers to the "81,000 pages of documents" the City produced. *See* Mot. at 13. The City does refer to a "substantial and time-consuming investigation to verify that the County had sufficient historic insurance assets to pay for its potential liability in this matter," asserting "available insurance plays a significant role in the allocation of CERCLA liability" and citing *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 707-08 (7th Cir. 2014). *Id.* at 12-13. Yet the Seventh Circuit there did not mention insurance at all when evaluating plaintiff's arranger liability; the court instead considered insurance only in the context of ensuring a party would not "recover more than 100% of its share." *Compare NCR Corp.*, 768 F.3d at 703-07, *with id.* at 707-08. The City's insurance investigation does not explain why the City delayed sufficiently reviewing its documents to determine the County's potential arranger liability in relation to the City's allegations in its initial complaint, statements in a joint status report, its own counsel's communications to the County, and at the latest by the deposition testimony of its own two witnesses.

The City's delay in reviewing its own documents highlights the City's lack of diligence in seeking leave to amend. Because the City has not shown it was diligent, the inquiry ends. *Mammoth*, 975 F.2d at 609. The City's request to file a First Amended Complaint to add the County as an additional defendant is DENIED.[4]

### B. Motion to Modify Scheduling Order and Allow Additional Depositions

The City also seeks to modify the scheduling order to extend the time allowed for discovery and expert discovery by four months, and to increase the number of depositions allowed in this action from ten to twenty, excluding expert depositions. Mot. at 1. At the outset, the court notes the Federal Defendants stipulated to the four-month extension. Stip. at 2, ECF

---

[4] The court recognizes that the City is likely to file a new action and seek relation or consolidation of the new action to or with this one.

12

No. 39. The court granted the four-month extension in its Second Amended Scheduling Order, ECF No. 42, and further clarified the dates in its Third Amended Scheduling Order. ECF No. 44. Thus, the City's request to amend the scheduling order by four months is DENIED as MOOT.

The remaining issue is the City's request to increase the number of fact discovery depositions from ten to twenty. Mot. at 1. The City requested these additional depositions after the Federal Defendants disclosed the names of eleven witnesses in its disclosures. Mot. at 20. In opposition, the Federal Defendants contend the City's request is premature because the City had only taken three depositions and had not exhausted all ten depositions allowed under the Federal Rules. Opp'n at 16. Generally, federal district courts will not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right under Rule 30(a)(2). *Couch*, 2011 WL 4499976, at *1. Courts refer to this rule, developed by federal district courts, as the "exhaustion rule." Here, the exhaustion rule acts as a bar to the City's requested additional depositions, and the City also has not exhibited the diligence necessary to obtain its requested relief.

Courts approach the exhaustion rule differently. Some courts do not apply or adopt the exhaustion rule. *See, e.g.*, *Hardin v. Wal-Mart Stores, Inc.*, No. 08-cv-0617 AWI BAM, 2011 WL 11563217, at *3 (E.D. Cal. Dec. 2, 2011) (not applying exhaustion rule when party only used nine depositions); *Laryngeal Mask Co. Ltd. v. Ambu A/S*, No. 3:07-cv-01988 DMS (NLS), 2009 WL 10672436, at *2 (S.D. Cal. July 17, 2009) ("[T]he Court respectfully declines to adopt a rule requiring exhaustion of all allotted depositions prior to the filing of a motion for leave to exceed the limits imposed."). Some courts have departed from the exhaustion rule where the complexity of the case clearly warranted more than ten depositions. *Del Campo*, 2007 WL 3306496, at *6 (deviating from exhaustion rule where case involved multiple plaintiffs, multiple defendants and complex legal issues). Some courts evaluate requests for additional depositions under Rule 26 without applying the exhaustion rule at all. *See, e.g.*, *Martinez v. California*, No. CV-F-07-996 AWI DLB, 2008 WL 5101359, at *2 (E.D. Cal. Dec. 3, 2008) ("More than 10 depositions per side must be justified under the 'benefits v. burdens' approach under Rule 26(b)(2)"); *Kaseberg v. Conaco, LLC*, No. 15-cv-01637-JLS (DHB), 2016 WL

13

8729927, at *2-3 (S.D. Cal. Aug. 19, 2016) (analyzing whether "good cause" required additional depositions when party had not exhausted number of depositions allowed under Rule 26).

Here, there are multiple reasons to deviate from the exhaustion rule. First, the Federal Rules of Civil Procedure do not require parties to exhaust the allotted depositions before seeking leave for more. Fed. R. Civ. P. 30(a)(2)(A)(i); *see also Hardin*, 2011 WL 11563217, at *3. Second, this litigation is complex. *See, e.g.*, *Laryngeal*, 2009 WL 10672436, at *2. The City has sued three federal defendants for liability under CERCLA, which has been aptly called an inherently "complex statute with a maze-like structure and baffling language." *ASARCO, LLC v. Celanese Chemical Co.*, 792 F.3d 1203, 1208 (9th Cir. 2015) (citing *California ex. rel. Cal. Dep't. of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 663 (9th Cir. 2004)) (internal quotations omitted). The relevant events took place over fifty years ago, and key witnesses are likely now either in poor-health or deceased; if still living they are located throughout the United States. *See* Orrell Decl. ¶¶ 23, 29. The nature of the litigation justifies departing from the exhaustion rule.

The Federal Defendants contend the City has not made a "particularized showing" as to why the additional depositions are necessary. Opp'n at 16. But many courts have not relied on a "particularized showing" standard, a standard developed by federal district courts, for a party to obtain more than the default number of 10 depositions under the federal rules. *Compare Couch*, 2011 WL 4499976, at *1, *with Laryngeal*, 2009 WL 10672436, at *4 (declining to adopt particularized showing requirement because language of Rules and Advisory Committee Notes does not require such a showing). Other courts have required only a Rule 26(b)(2) "benefits versus burden approach" and sought to ensure "the discovery is not unreasonably cumulative or duplicative." *Laryngeal*, 2009 WL 10672436, at *4; *see also Townsend v. Imperial Cty.*, No. 12-cv-2739-WQH (PCL), 2014 WL 2090700, at *3 (S.D. Cal. May 16, 2014) (omitting discussion of need for "particularized showing").

Regardless, the City has made a "particularized showing" for expanding the number of depositions consistent with Rule 26. The City sought specific information on how certain solvent-soaked rags from the missile launch facilities were ultimately disposed of and the

14

different types of solvents used.  Mot. at 8; Reply at 10.  The Federal Defendants have not provided this information, asserting instead their initial disclosure witnesses had no responsibility for disposal of wastes generated at the missile launch facilities.  Mot. at 8.  The City contends it needs to depose "as many of these initial disclosure witnesses as possible" to "avoid any surprise testimony at trial."  *Id.*  The City seeks to depose "retired Air Force personnel that actually worked at the [missile launch facility], with sufficient regularity to potentially have relevant information about the types of solvents used, the wastes generated as a result, and [to have] potentially [seen] how those wastes were disposed of," including if any witness "has specific knowledge" about "the ultimate disposal of the solvent-soaked rags and cloths used at the" missile launch facility.  *Id.* (citing Orrell Decl. ¶ 27).  Because the Federal Defendants have not provided the answers to the City's questions in document production or discovery responses, the depositions the City seeks cannot be considered "unreasonably cumulative or duplicative." *Laryngeal*, 2009 WL 10672436, at *4.

Moreover, there is no indication the depositions the City seeks were unreasonably duplicative and cumulative, even if there is some minor overlapping testimony.  *See, e.g.*, *Couch*, 2011 WL 4499976, at *2.  While the City has had the opportunity to pursue the same discovery by less intrusive means, the court finds that "oral testimony likely can prove these allegations and that other less-intrusive discovery devices may be ineffective."  *Id.*

The Federal Defendants contend they "should not be prejudiced by an onslaught of depositions . . . because the City failed to conduct the ten depositions allowed under the [f]ederal [r]ules during the time permitted by the [c]ourt."  Opp'n at 17.  But because the City likely would bear the costs of any additional depositions, including subpoenas, court reporters and transcripts, the burden of the additional depositions would not outweigh its benefit for fact discovery.  *See* Couch, 2011 WL 4499976, at *2.  Additionally, the Federal Defendants "did not place before the [c]ourt specific evidence demonstrating that the burden or expense outweighs [the additional depositions'] likely benefit."  *Mintz v. Mark Bartelstein & Assocs., Inc.*, No. CV 12-3055 SVW (SSX), 2012 WL 12886492, at *3 (C.D. Cal. Sept. 14, 2012).  The court therefore finds any burden or expense of the additional depositions is not "disproportionate to the amount in

15

controversy or the complexity of the claims," *id.*, alleged to be "at least $5 million at stake in this action." Reply at 10.

But the City has not identified sufficient persons to justify raising the total number of depositions to twenty. The court therefore does not have "information by which to evaluate whether [the requested twenty] depositions would be cumulative, duplicative, burdensome, or relevant." *Kaseberg*, 2016 WL 8729927, at *4. The City has identified eleven witnesses disclosed by the Federal Defendants who were not the subjects of the City's three already completed depositions. *See* Orrell Decl. ¶¶ 5-6; Mot. at 20. The City's motion to expand the number of depositions is therefore GRANTED IN PART, expanding the City's permitted depositions to a total of fourteen (14) depositions. The City therefore has seven (7) additional depositions remaining. *See* ECF No. 57 ("Since the October [2017] Third Amendment to the Scheduling Order, the City has taken four depositions."). The Court permits the City forty-five (45) days to complete these depositions, and the City will bear any additional costs.

This order does not alter any other portions of the initial scheduling order, ECF No. 11, or dates listed in the fourth amendment to the initial scheduling order, ECF No. 58. In the next fourteen (14) days, in a joint filing, the parties shall propose any further modification to the scheduling order needed as a result of this order.

IV. CONCLUSION

For the above reasons, the City's motion is GRANTED IN PART. Specifically, the court permits the City forty-five (45) days to take up to a total of 14 depositions. The remainder of the City's motion is DENIED, including the City's request for leave to amend its complaint to name the County of Placer as an additional defendant and the City's request for leave to modify the scheduling order in other respects, as explained above.

In the next fourteen (14) days in a joint filing, the parties shall propose any further modification to the scheduling order needed as a result of this order.

This resolves ECF No. 34.

IT IS SO ORDERED.

DATED: August 15, 2018.

UNITED STATES DISTRICT JUDGE